Curia, per Richardson, J.
1. Whether the appellants or ap-pellee had a right to begin and end the evidence and argument upon the appeal from the Ordinary, has been before decided in the case of Southerlin v. M'Kinney, ante. p. 35. In that case, it was decided, upon very full consideration, that according to practice in this State, the appellant has the right; and the court feels itself bound to follow that rule. The decision established the practice. 2d. Whether the testatrix, Lucy Hatcher, was of sound and disposing mind, memory and" discretion at the time she executed the last will submitted to the Ordinary; and whether the testatrix was not un *280 duly influenced to make such a will, so as to deprive her of free agency, and render it a void instrument. I have to observe, that the presiding Judge, on the circuit, was satisfied, by the evidence, of the mental competency of Lucy Hatcher, to make such last will — that her mind was sound, and her will firm, and that it would have taken great address and influence to have deprived her of free agency, or swayed her at all, in a matter of importance, although her perception and memory; were much decayed. That with this opinion of Lucy Hatcljer’s mind and firmness of purpose, he could not perceive in the evidence, sufficient proof of such undue and improper influence as to disaffirm the decree of the Ordinary, admitting the will to probate. But both of these questions were submitted to the proper tribunal for the decision of facts, with full instructions upon the legal meaning of a sound mind, memory and discretion in testators; and the jury have, by their verdict, annulled the will. It was within their peculiar province and jurisdiction so to do; and this court, under all the circumstances and character of the particular case, does not perceive sufficient reason to interfere with the verdict, by ordering a new trial. Upon this head, it may be observed, that the discovery of the former will and the codicil, will still leave Lucy Hatcher by no means altogether disfranchised of her right to make a will, and that in her own way, with her prevailing disposition, which seems to have been uniform. It is highly satisfactory, that this is to be the result, in the old lady’s interesting case. The only other ground relied upon for a new trial arises from the late discovery of a former will of Lucy Hatcher, which, if known at the trial, would have rendered three of the witnesses interested, and therefore incompetent to give evidence, and would have contradicted one of them in part. The discovery of the former will is set forth in the affidavit of the appellant, Benjamin Hatcher. — (See ante. p. 279.)
The subsequent discovery of written documents, important to the issue, and either unknown before, or entirely out of the reach of the party offering them, has been sometimes held a sufficient ground for a second trial; but “rarely,” says Judge Waties in the case of Drayton v. Thomson, (1 Bay, 261,) and “never,” he *281 adds, “ where the party might, by due diligence, have procured it before.” Does the' discovery of Lucy Hatcher’s will, of June, 1833, come up to these prerequisites, or, even, only one of them? 1st. That will could have furnished no evidence upon the issue— whether Lucy Hatcher was of sound and disposing mind in February, 1836; or whether she had been unduly swayed in executing the supposed will of that year. Wherein was it important? But again, the will of June, 1833, was in the possession of Benjamin Hatcher, and it is plain, that he had knowledge of such a will. He had been advised to search for it; but did not search so diligently as to find it, until the trial was over: when he searched again, and found it among his own papers. Without discrediting Mr. Hatcher’s moral truth in this matter, we must not encourage such negligence, by ordering a new trial. He must abide the consequence of such extreme inactivity in his own concerns; and the neglect of the duty due to others. When we consider the hot contest between him and the distributees of Lucy Hatcher, such negligence was scarcely less than culpable. Let us suppose the will of 1833 had been before the court, at the trial of the appeal from the ordinary; it could have done no more than prevent the evidence of Jonathan and Tabitha Tillman, and Frank Bettis, by showing they were interested in that former will.' But such interest being unknown to themselves, could not lessen the credit due to their past evidence. The objection offered is merely technical and prospective. It does not go back to the issue already tried and decided. It may have contradicted, in part, Frank Bettis, and therefore weakened his evidence ; but that would not destroy it. It should be here, too, kept in mind, that those witnesses were introduced to disprove the sound mind and understanding of Lucy Hatcher, which was not the ground really relied upon by the appellees. The true question before the jury was, whether this ancient testatrix had not been coaxed, cajoled, or in some way deceived, and tricked, in carrying her known partiality for her youngest son, into the extreme of bequeathing to him her entire property. And I have no doubt, that Mr. Hatcher’s permitting and encouraging such a sweeping bequest to himself, when pro *282 curing the will, was left by his aged mother to his hands, and the dislike of monopolies had weight with the jury. But the moral is good, and where there is no plain legal objection we must not disturb such a verdict. I have only to add, upon this last ground, that objections to the competency of witnesses, to avail, must be made during the trial, at farthest; and that the subsequent discovery, that a witness was incompetent, is not, in itself, sufficient ground for a new trial. (See Turner v. Pearte, 1 Term Rep. 717, where this question is well considered by Buller.) Such objections depend upon the particular case, as where the opposite party was deceived ; or the evidence was of great weight, and the like; but is not, of itself, a substantive ground for a new trial. Upon the whole, then, the court is constrained to follow the common rule, that where the case consists of facts which have been fairly submitted to the jury, with full instructions from the court, their verdict concludes the case.
Wardlaw & Wardlaw, for the motion.
J. P. Carroll, contra.
The motion for a new trial is therefore dismissed unanimously,
Earle, Evans and Butler, Justices, concurred.